BOTTOM LINE ASSOCIATES, INC. *vs.* INTERNATIONAL DATA GROUP, INC. June 29, 1984. *Contract,* Performance and breach, Purchase of time on television stations.

In late 1980, International Data Group, Inc. (IDG), decided to produce and broadcast in thirteen geographical markets throughout the country a series of television programs based on the general use of computers. It entered into negotiations with Bottom Line Associates, Inc., doing business as Singer Media Services, Inc. (Singer), a firm that specialized in the purchase of time on television stations. On February 9, 1981, the parties executed a contract, and Singer subsequently set about arranging for the purchase of television time in the various markets. It advised IDG almost daily of the different proposals received from television stations in the thirteen markets. Prior to the week of April 4, 1981, IDG selected stations and program times in each of the thirteen markets from lists submitted by Singer. IDG entered into commitments with the stations, and the programs commenced broadcasting in all the markets during the week of April 4, 1981. Subsequently, Singer brought this action, claiming that IDG owed it money pursuant to the contract. In particular, Singer claimed that it was owed: (1) $7,500 for its success in arranging for the television series to go on the air in all the markets during the week of April 4, 1981; and (2) a sum of money equal to 15% of the savings to IDG on the purchase of the television time, because the actual cost of the time was less than the cost budgeted in the contract.

A trial was held in the Superior Court before a judge sitting without jury. Judgment entered in favor of Singer for $15,585.71. That sum included $7,500 for the additional fee and $8,085.71 representing 15% of the cost saving on the purchase of the television time. The defendant, on appeal, contends that the judge erred in his interpretation of the contract. We affirm.[1]

---

[1] At the close of the evidence, the judge requested both parties to submit proposed findings of fact and rulings of law. Both parties complied with the judge's request. The judge, some three weeks later, adopted verbatim Singer's proposed findings and rulings but modified the damage award requested by Singer. IDG does not make the action of the judge in adopting Singer's submission an issue but grumbles at length in its brief about the judge's action. We note that this judge, unlike the trial judge in *Cormier* v. *Carty,* 381 Mass. 234 (1980), requested both parties to submit proposed findings and rulings. In any event, we have submitted the judge's findings to stricter scrutiny than usual and find that they are supported by the evidence. *Id.* at 237. Also see *Roche* v. *Boston Safe Deposit & Trust Co.,* 391 Mass. 785, 792 (1984).

1. *The $7,500 additional fee.* Paragraph 2(d) of the contract provided in part as follows: "By the nature of this project, it is important that the 13 [markets] be bought at appropriate stations at suitable times for broadcast beginning the week of April 4th. Therefore, we are setting as an incentive to accomplish the whole assignment an additional fee of $7,500 should this mission be accomplished. Each of the stations you propose to buy should be submitted for approval by IDG . . . ." In addition, paragraph 2(1) provided in part, "It is understood that upon acceptance of a station commitment, [Singer] will have earned [its] fee as described in the beginning subparagraphs, and that fee will be paid within fourteen days . . . ."

IDG concedes that it entered into commitments in all thirteen markets and that the broadcast deadline of the week of April 4th was met but argues that, in order for Singer to have earned the $7,500 fee, the programs had to be aired at "appropriate stations at suitable times." Its contention is unsupported by the contract provisions.

The language contained in the contract is unambiguous and, therefore, its interpretation is a question of law for the court to decide. See e.g. *Sparks* v. *Microwave Associates, Inc.,* 359 Mass. 597, 600 (1971). If the words of a contract are plain and free from ambiguity, as here, they must be construed in accordance with their ordinary and usual sense. *Edwin R. Sage Co.* v. *Foley,* 12 Mass. App. Ct. 20, 28 (1981). The language in paragraph 2(d) relative to the requirement that each station "should be submitted for approval by IDG" shows that IDG had the right to accept or reject each station and did not have to accept proposals which were not at "appropriate stations at suitable times." Further, the contract expressly states in paragraph 2(1) that, if IDG does accept a station commitment, Singer must be paid its fee. Here, IDG entered into station commitments in all thirteen markets and the broadcasting deadline was met; therefore, IDG was obligated to pay the additional $7,500 fee to Singer.

2. *The 15% cost savings fee.* Paragraph 2(g) of the contract reads as follows: "Based on [IDG's] examination of quoted figures, [IDG has] arrived at a working budget estimate of $17,700 per week for this buy. If [Singer is] able to arrange for the net cost to [IDG] per week of the buy to be less than $17,700, [IDG] will pay you a 15% share of savings realized week-by-week as the time is purchased and paid for." Singer sent bills to IDG in April and May for 15% of the cost savings and was paid. Subsequent bills of Singer were not paid.

IDG concedes that the actual net cost per week to it of the station commitments was less than $17,700 and that the sum of $8,085.71 awarded to Singer by the judge on this phase of the case is mathematically correct. IDG contends that in order for Singer to earn any payment under paragraph 2(g) it was necessary for it to obtain station commitments in all thirteen markets at appropriate stations and suitable times. But this argument ignores IDG's right under paragraph 2(d) to accept or reject the stations and times

of broadcasting. By accepting the stations and times with the resulting cost savings, IDG was obliged to pay Singer 15% of those savings.

*Judgment affirmed.*

*Andrew F. Lane* for the defendant.
*Ronald R. Cloutier* for the plaintiff.