38 Mass. App. Ct. 447                                                447

Harris *v.* Old King's Highway Regional Historic District Commission.

JOHN H. HARRIS *vs.* OLD KING'S HIGHWAY REGIONAL
HISTORIC DISTRICT COMMISSION & others.[1]

No. 94-P-236.

Barnstable. September 23, 1994. - April 26, 1995.

Present: WARNER, C.J., DREBEN, & GREENBERG, JJ.

Further appellate review granted, 420 Mass. 1107 (1995).

*Historic District Commission*, Decision, Appeal. *Practice, Civil*, Historic
district appeal.

The findings of a District Court judge reviewing a decision of the Old
King's Highway Regional Historic District Commission pursuant to the
authority granted by St. 1973, c. 470, as amended by St. 1975, c. 845,
§ 11, supported his conclusion that the local district committee of the
town in question had no rational basis to deny a property owner's appli-
cation for a certificate of appropriateness to convert a garage into a
shed or studio. [451-452] DREBEN, J., dissenting.

CIVIL ACTION commenced in the Barnstable Division of
the District Court Department on February 5, 1992.

The case was heard by *W. James O'Neill*, J.

*Robert G. Brown* for the defendants.

*Robert A. Bianchi* for the plaintiff.

GREENBERG, J. This dispute between a landowner and the
historic district committee of Barnstable (local committee)
has already encompassed two administrative hearings, a re-
view by a judge of the District Court, and an appeal to the
Appellate Division of the District Court.

The landowner — John H. Harris — wanted to demolish
several older buildings on his acre lot and build a new resi-
dence. The existing buildings, none of which, by common
consent of the parties, has any historical significance, consist
of a residential house, a detached garage and another out-

---

[1] Peter Freeman, chairman of the commission; Avard Craig; Janet
Francis; David Moeller and Christopher Miner, individual members.

building. The one-acre lot is situated on Harris Meadow Lane, a part of the Old King's Highway Regional Historic District located in Barnstable, created twenty-one years ago by St. 1973, c. 470, as amended by St. 1975, c. 298 and 845; St. 1976, c. 273; St. 1977, c. 38 and c. 503; St. 1979, c. 631; and St. 1982, c. 338 (hereinafter the Act).

Harris applied to the local committee for a certificate of demolition to remove the old buildings and for permission to build a new Cape Cod style home with an attached three-car garage. The committee approved both applications. During the reconstruction, Harris determined that the old garage was structurally sound and decided to convert it into a shed or studio. After a public hearing, the local committee denied Harris a certificate of appropriateness that would have enabled him to keep the shed on his lot. It also disallowed two design features of the house: a sky light and the garage doors.

Harris then exercised his rights under § 11 of the Act by appealing from the local committee's decision to the regional historic commission (commission). After a hearing, the commission reversed the local committee's decision regarding the skylight and the garage doors. As to the shed, Harris did not fare as well: the commission found that the local committee "did not act in an arbitrary, capricious or erroneous manner" by denying Harris' application for a certificate of appropriateness.

Thereafter, Harris exercised his rights under the second paragraph of § 11 of the Act by appealing to the District Court of Barnstable. A judge of that court found facts and concluded that the local committee wrongly denied Harris the certificate of appropriateness for the shed.

The same judge who had heard the case reported it to the Appellate Division, which, finding no error of law, dismissed the report. The commission appeals from the judgment of the Appellate Division.[2]

─────────────

[2]"This court's review is on the District Court report," *Anderson* v. *Old King's Hy. Regional Historic Dist. Commn.*, 397 Mass. 609, 611 (1986), including the written decision and findings of the trial judge and pleadings

We begin with a brief overview of the mission of the agency.[3] A principal role of the commission is to "promote the general welfare of the inhabitants [of the district] through preservation and protection of buildings, settings and places within [its] boundaries . . . through the development and maintenance of appropriate settings and exterior appearance of such buildings." St. 1982, c. 338, § 1. Under § 5 of the Act, each member town of the historical district is authorized to appoint a district committee consisting of five persons. Their role is to receive and evaluate applications for certificates of appropriateness. To assist the district committees, the commission — in 1983 — promulgated guidelines which are contained in a bulletin included in the record. According to the commission's guidelines, each application "shall be judged on the criteria set forth in the Act under Section 10[4] including therein, but not limited to, historic value and significance, general design, arrangement . . . , relative size and settings."

At the heart of the dispute between Harris and the local committee is whether the size of Harris' new home combined with the shed, as an accessory building, was too large com-

---

necessary for an understanding of the questions involved. See *Worldwide Commodities, Inc.* v. *J. Amicone Co.*, 36 Mass. App. Ct. 304, 306 & n.3 (1994).

[3]For a more detailed discussion of the function and procedures of the commission, see *Sleeper* v. *Old King's Hy. Regional Historic Dist. Commn.*, 11 Mass. App. Ct. 571 (1981).

[4]Section 10, in pertinent part, reads as follows:

"In passing upon appropriateness, the committee shall consider, among other things, the historical value and significance of the building or structure, the general design, arrangement, texture, material and color of the features, sign or billboard involved and the relation of such factors to similar factors of buildings and structures in the immediate surroundings. The committee shall consider settings, relative size of buildings and structures, but shall not consider detailed designs, interior arrangement and other building features not subject to public view. The committee shall not make any recommendations or requirements except for the purpose of preventing changes in the exterior architectural features obviously incongruous to the purposes set forth in this act."

450                    38 Mass. App. Ct. 447

Harris *v.* Old King's Highway Regional Historic District Commission.

pared to other homes in the district.[5] The local committee failed to follow the commission's rule published in the Old King's Highway Regional Historic District Bulletin, by neglecting to "state in writing the specific reasons for its [refusal to issue a certificate of appropriateness]." However, as noted in the judge's decision, the committee determined that the "sizing, massing, bulk, and scale" of the new home combined with the shed worked against the issuance of a certificate of appropriateness. The judge reversed the commission's decision, ruling in part that the decision of the local committee was in excess of its authority. In careful findings, he rejected the commission's position that the entire project was too big. Based largely on a view taken of Harris' property and other homes around the locus, he found that the project was no larger than the other homes in the immediate area. He also found that it was characteristic of the older homes in the district to have outbuildings. That finding runs contrary to the testimony of the commission's consultant, who opined at trial that such structures detracted from the historical character of the area.

As might be expected, Harris' evidence on the point differed from that of the commission. An architectural designer testified that the word "massing" cannot be defined architecturally, but that he understood the term to mean a building's three dimensional qualities such as height, width and length as well as a building's articulation, configuration and fenestration. He rendered an opinion that the mass of this property would not be inconsistent with other older buildings in the area. He also testified that numerous other properties in the immediate area have accessory buildings.

After observing the property from the vantage point of Old King's Highway (Route 6A), the judge found the house barely noticeable and the shed completely hidden from view. From Harris Meadow Lane, he found that the lower grade of the lot minimized the visual impact of the house. The old

[5]A building is incidental or accessory if it is (1) subordinate and minor in significance and (2) attendant or concomitant to the principal structure. *Harvard* v. *Maxant*, 360 Mass. 432, 438 (1971).

38 Mass. App. Ct. 447                                                451

Harris v. Old King's Highway Regional Historic District Commission.

garage had been moved to the rear side of the lot, and was not visible from the front of the house.

The authority of a District Court judge when reviewing the commission's decision is "analogous to that governing exercise of the power to grant or deny special permits" under local zoning regulations. See and compare *Gumley* v. *Selectmen of Nantucket*, 371 Mass. 718, 719 (1977).[6] The District Court judge must affirm the commission's decision unless on the facts found by the judge, the commission "should have concluded that the local committee exceeded its authority, exercised poor judgment, or was arbitrary, capricious, or erroneous in its action." *Anderson* v. *Old King's Hy. Regional Historic Dist. Commn.*, 397 Mass. 609, 611 (1986).[7] As noted, the judge found that it was a feature of the homes in the area to have outbuildings. None of the experts' conclusions, of course, is binding on the trier of fact, and they may be rejected in whole or in part. *Dodge* v. *Sawyer*, 288 Mass. 402, 408 (1934).

Further, he found that there was "little indication at the appeal hearing (and nothing in writing from the [local] Committee) as to how the shed/studio did not conform to the Historic District Commission mandate." "[F]indings which rest on a view are sometimes unassailable, unless the record is made to reflect the particular observances which underlie the findings." *Consiglio* v. *Carey*, 12 Mass. App. Ct. 135, 138 (1981). We conclude that the judge's findings have adequate support in the record.

---

[6]The Nantucket Act provides: "Any person or the Historic District Commission, aggrieved by a decision of the board of selectmen, may appeal to the Superior Court sitting in equity for the County of Nantucket; . . . The court shall hear all pertinent evidence and determine the facts and upon the facts so determined, annul such decision if found to exceed the authority of the board or make such other decree as justice and equity may require." St. 1970, c. 395, § 12.

[7]The Old King's Highway Act seems to go further by giving the District Court power to "modify either by way of amendment, substitution, or revocation, the decision of the commission and . . . issue such superceding approval or denial of the application with such condition as said district court in its discretion deems appropriate. . . ." St. 1973, c. 470, § 11, as amended by St. 1975, c. 845.

Substantial deference ought to be afforded to the determination of appropriateness or lack thereof by the commission. However, the discretion of the commission and of the town committee is not without bounds. Section 11 of the Act permits the court to "issue such superceding approval or denial of the application with such condition as said district court in its discretion deems appropriate, and [the court] shall have all of the powers to act in the matter that are available to a court of general equity jurisdiction."

A principal purpose of the Act is to harmonize buildings located in the historic area and to suppress the obviously incongruous. *Sleeper* v. *Old King's Hy. Regional Historic Dist. Commn.*, 11 Mass. App. Ct. 571, 574 (1981). We do not construe the Act as requiring that the architectural and cultural motif be frozen at a particular moment in the history of Cape Cod. The mandate of the Act is not that one sort of design or configuration be preserved to the exclusion of another, but that the cultural heritage in its entirety be preserved.

We conclude, therefore, that there is no rational basis for the district committee's decision. See *Howe* v. *Health Facilities Appeals Bd.*, 20 Mass. App. Ct. 531, 534 (1985).

*Order dismissing report
affirmed.*

DREBEN, J. (dissenting). Before setting out my reasons for disagreeing with the majority's conclusion that "[t]here seems no rational basis for the committee's decision in this instance," it is important to consider the roles of the committee, the commission, and the District Court in determining whether the plaintiff may keep his shed.

As mandated by § 10 of the Act, "In passing upon appropriateness, demolition or removal, the committee shall determine whether the size, features, demolition or removal . . . involved will be appropriate for the purposes of this [A]ct." That purpose, as set forth in § 1, is to promote the general welfare through "the preservation and protection of build-

ings, settings and places . . . and through the development and maintenance of appropriate settings and the exterior appearance of such buildings and places, so as to preserve and maintain such regional district as a contemporary landmark compatible with the historic, cultural, literary and aesthetic tradition of Barnstable county, *as it existed in the early days of Cape Cod*, and through the promotion of its heritage" (emphasis supplied).[1]

The committee had originally approved the demolition of a detached shed and the construction of a new house with an attached three car garage. After the fact, that is, after the house and garage were built, the plaintiff wanted to retain the shed, but the committee refused permission.

As a person aggrieved by a local committee's determination, the plaintiff appealed to the regional commission. Recognizing that its "initial function is not to exercise its independent judgment on the facts, but rather to determine whether the local committee erred in some respect," *Anderson* v. *Old King's Hy. Regional Historic Dist. Commn.*, 397 Mass. 609, 611 (1986), the commission, after hearing, upheld the committee with regard to the shed. In its decision, the commission noted that the committee had explained its denial by pointing out that the original plan "de-emphasized the massing and size of the home," that, in any event, new construction of three car garages are discouraged, and that the three car garage and additional outbuilding were "just too much." The representative of the committee also testified before the commission that the "ultimate issue was not design, per se, but historic compatibility."

---

[1]In its entirety, § 1 of the Act entitled "purpose" reads as follows: "The purpose of this [A]ct is to promote the general welfare of the inhabitants of the applicable regional member towns so included, through the promotion of the educational, cultural, economic, aesthetic and literary significance through the preservation and protection of buildings, settings and places within the boundaries of the regional district and through the development and maintenance of appropriate settings and the exterior appearance of such buildings and places, so as to preserve and maintain such regional district as a contemporary landmark compatible with the historic, cultural, literary and aesthetic tradition of Barnstable county, as it existed in the early days of Cape Cod, and through the promotion of its heritage."

Aggrieved again, the plaintiff appealed to the local District Court. That court is to hear evidence and determine the facts using a standard of review "analogous to that governing exercise of the power to grant or deny special permits." *Anderson, supra* at 611. "Thus the judge must affirm the regional commission's decision unless, on the facts found by the judge, the commission should have concluded that the local committee exceeded its authority, exercised poor judgment, or was arbitrary, capricious, or erroneous in its action." *Ibid.* It is the committee's evaluation, and not the judges's, of the historic compatibility of the buildings with the tradition of the county as it existed in the early days of Cape Cod which is controlling. See *Subaru of New England* v. *Board of Appeals of Canton*, 8 Mass. App. Ct. 483, 488 (1979).

As stated in the report to the Appellate Division, there was evidence before the judge from a consultant in historic preservation that outbuildings were built in the post-World War II period and that such buildings did not exist at the turn of the century. The consultant noted that the original application was for the demolition of a single-family house with detached outbuildings and their replacement with a single-family house with an attached garage. Now sought, was a single-family house with an attached garage and with a detached outbuilding. In her opinion, this design was not appropriate to the historic character of the area.

The District Court judge did not dispute the consultant's testimony. Indeed in his report setting forth the relevant evidence, he indicated that the evidence "tended to show" what he summarized as the consultant's testimony. In his findings, which under § 11 of the act are conclusive, the judge primarily discussed the limited visual impact of the shed-studio and noted that "it appears to be more of a characteristic of the older homes to have an outbuilding." The judge did not explain what his reference to "older homes" meant, and, except for noting the consultant's testimony, he did not in any way discuss the historic compatibility of the lot's buildings with the tradition of the county in the early days.

Since on the evidence found by the judge there was a basis for the committee's determination of historic incompatibility, and since such a decision is for the committee and not the District Court judge, I disagree with the majority's conclusion that there was no rational basis for the committee's denial of the certificate of appropriateness. Accordingly, I would reverse the decision of the District Court judge that the decision of the local committee, as ratified by the commission, was "in excess of its authority in that it is arbitrary, and in accordance with the purposes of the Old King's Highway Regional Historic District Act."[2]

---

[2]"This court's review is on the District Court report just as was the review by the Appellate Division." *Anderson* v. *Old King's Hy. Regional Historic Dist. Commn.*, 397 Mass. 609, 611 (1986).